GEHRING & SATRIALE LLC
Louis R. Satriale, Jr. (LS-5027)
Joseph E. Gehring, Jr. (JG-8178)
The Lincoln Building
60 East 42nd Street, Suite 817
New York, New York 10165
(212) 400-7420
(212) 400-7440 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDDY M. MOROCHO, WALTER TACURE on behalf of themselves and others similarly situated, | 07 Civ. 2979 (CLB) (MDF) |
| Plaintiffs, | ELECTRONICALLY FILED |
| -against- | |
| GEORGE C. KELLY and NYACK COLONIAL CAR WASH, INC., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNTIAVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PLELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

    POINT I
    PLAINTIFFS DO NOT SEEK DISCOVERY RELEVANT TO THIS MOTION ............ 1

    POINT II
    TACURI HAS NO STANDING TO BRING AN  FLSA CLAIM .................................... 2

    POINT III
    MOROCHO WAS AN EXEMPT EMPLOYEE ................................................................ 3

    POINT IV
    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED.............................. 7

CONCLUSION........................................................................................................................ 8

## TABLE OF AUTHORITIES

Donovan v. Burger King Corp.,
675 F. 2d 516 (2d Cir. 1982)..........................................................................................5-7


29 C.F.R. § 541.2 ...........................................................................................................3

29 C.F.R. § 541.700 ....................................................................................................5-6

Loc. R. 56.........................................................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs' response to this motion makes clear that Plaintiffs are attempting to carry this litigation on the backs of plaintiffs who have no standing to bring these claims. In fact, Plaintiffs' primary argument is that they need discovery not on the threshold questions of Plaintiffs' standing but on the identity of other potential plaintiffs. Given that neither plaintiff is a proper plaintiff to bring an action under the Fair Labor Standards Act ("FLSA"), the only claim within the Court's original jurisdiction, Plaintiffs' request for such discovery is nothing more than a desperate attempt to resurrect claims Plaintiffs themselves cannot assert.

## ARGUMENT

## POINT I

## PLAINTIFFS DO NOT SEEK DISCOVERY RELEVANT TO THIS MOTION

In opposition to this motion, Plaintiffs assert they need to conduct discovery. (Opp. Memo. at 10-11). The discovery sought by Plaintiffs, however, is completely irrelevant to the questions raised by this motion – specifically, whether Plaintiffs can properly assert claims under the FLSA as a threshold matter.

Instead, Plaintiffs assert they need to conduct discovery as to other potential claimants:

> Plaintiffs are in need of discovery to determine (a) the names and contact information of class members that should be included in this action, (b) the amount of hours that Plaintiffs worked during their tenure at the Car Wash, and (c) the amount of tips that the Car Wash collected and improperly withheld from its employees.

(Opp. Memo. at 10).

To the extent any discovery is conducted prior to resolution of this motion, such discovery should be strictly limited to Tacuri's assertion that he was employed at the car wash despite, as discussed below, the fact that no one at the car wash knows who he is and Nyack

Colonial has no records of him ever working at the car wash.[1]

## POINT II

## TACURI HAS NO STANDING TO BRING AN FLSA CLAIM

In response to sworn testimony from all current employees at Nyack Colonial that no one at the car wash knows who Walter Tacuri[2] is, Tacuri simply reiterates that he worked at the car wash "until May of 2004."

Although no one who works at the car wash knows who Tacuri is – even an educated guess as to Tacuri's identity has been proven incorrect by Tacuri's affidavit – and Tacuri has been unable to present any documentary evidence of his claim that he once was an employee of Nyack Colonial, Tacuri offers only his own self-serving statement that he was an employee at the car wash "until May of 2004."  (Tacuri Aff. ¶ 3).  Tacuri's statement is very convenient given that, even assuming a willful violation of the FLSA, he can assert claims under the FLSA only as far back as April 13, 2004 (*i.e.*, three years prior to the filing of this action), at most 2-6 weeks prior to the time he says he left Nyack Colonial.  Significantly, Tacuri does not allege in the complaint that he worked <u>any</u> overtime in the period from April 13, 2004 "until May of 2004," warranting dismissal of his FLSA claim on that fact alone.

Nyack Colonial, moreover, has no records of Tacuri working at the car wash at any time. Management and his alleged co-workers have no idea who he is – even Morocho, Tacuri's co-plaintiff, did not state in his affidavit that Tacuri ever worked at the car wash.  Simply put, Tacuri asks the Court to exercise jurisdiction over his federal claim when he cannot even present any evidence that he was ever an employee of Nyack Colonial in the first place.

---

[1]    As discussed below, no discovery is necessary as to Morocho's exempt status under the FLSA because Morocho does not dispute any of the material facts relating to his duties and responsibilities at the car wash.

[2]    Tacuri is identified in the complaint as "Tacure."  In opposition to this motion, Tacuri has submitted an affidavit in which he, by hand, corrects the spelling of his name.

As discussed above, Tacuri either has never worked for Nyack Colonial or, at best, has not worked for Nyack Colonial since at least 1999. Tacuri's FLSA claim must therefore be dismissed as a matter of law.

**POINT III**

**MOROCHO WAS AN EXEMPT EMPLOYEE**

In response to the evidence that he was exempt from the FLSA's overtime requirements, Morocho does not at all deny the material facts.[3] The undisputed facts show that Plaintiff was at all relevant times an exempt employee not entitled to overtime under the FLSA.

For example, Morocho does not dispute that he was given the job description and in fact "performed the duties described in his job description." (Def. Statement ¶¶ 13, 16). That job description made clear that Morocho was responsible for training new employees, directing the employees' work, ensuring that employees arrived to work on time and performed their jobs satisfactorily, and scheduling employees' hours. (Def. Statement ¶ 13).[4]

Morocho, who was paid almost twice as much as the other workers at the car wash, does not dispute that he was compensated on a salary basis at a rate of not less than $455 per week. (Def. Statement ¶ 17).[5]

---

[3]    In fact, Plaintiffs should be deemed to have admitted each material fact set forth in Defendants' motion for, although they ask the Court to treat the motion as one for summary judgment (as Defendants titled their motion), they did not serve a response to Defendants' Statement of Undisputed Facts. See Local R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in a statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

[4]    Morocho does not dispute that he had or performed the responsibilities set forth in the job description; he apparently disputes only whether he held the title of "Operations Manager" in performing those responsibilities (Morocco Aff. ¶ 3), which is, of course, irrelevant to this analysis. See, e.g., 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.").

[5]    With no evidentiary support, Plaintiffs argue in the opposition memorandum of law that "Morocho's salary was subject to deduction for part-day absences if he did not make up the lost time by working additional hours such that he was not paid on a salaried basis." (Opp. Memo. 14). However, that argument is inconsistent with Morocho's affidavit, in which he merely states that "I was required to make up part-day absences by working

3

Morocho does not dispute that he customarily and regularly directed the work of two or more other employees. (Def. Statement ¶ 17).

Morocho does not dispute that he had the authority to hire or fire other employees. (Def. Statement ¶ 17). In response to this fact, Morocho states only that Kelly, his "superior" at the car wash, "was responsible for scheduling and hiring employees." (Morocho Aff. ¶ 6). Morocho is conveniently silent both as to his own responsibilities for scheduling and hiring employees and as to his responsibilities in terms of disciplining and terminating employees, which Kelly's affidavit specifically states were among Morocho's responsibilities at the car wash. (Def. Statement ¶¶ 13-14, 16-17).

Morocho does not dispute that his primary duty was the management of the car wash and that he in fact was responsible for managing the car wash even when he was not physically at the car wash. (Def. Statement ¶ 18). Nor does not Morocho dispute that Nyack Colonial required him to have a mobile phone, and paid for it, so he could regularly check in with the employees when he was not at the car wash. (Def. Statement ¶ 18).

Morocho does not dispute that he had the discretion to adjust his own work schedule according to the needs of the car wash. (Def. Statement ¶ 19). The only possible statement made in response to this fact is Morocho's statement that he was required to make up time he was not at the car wash (Morocho Aff. ¶ 5), essentially admitting that he had the discretion to adjust his own work schedule.

Perhaps most egregious, however, is Plaintiffs' argument that "[a]n employee of a retail service establishment such as the Car Wash is not considered 'exempt' from the Fair Labor

---

additional hours on other days." (Morocho Aff. 5) (emphasis added). Morocho does not state that his salary was subject to deduction or that any deduction ever was made to his salary for such part-day absences. Being paid on a salary basis is not a license to work as few hours as an exempt employee wishes – an employer is entitled to expect an exempt employee to work a minimum number of hours or be subject to discipline such as, for example, termination.

Standards Act if he spends more than forty percent (40%) of his/her time in one week on non-exempt work." (Opp. Memo at 13). Plaintiffs cite <u>Donovan v. Burger King Corp.</u> and 29 C.F.R. § 541.700 as authority for this proposition. As Plaintiffs must concede, however, such an analysis applies only to employees who earned less than $250 per week – for employees like Morocho who earned at least $250 per week, the 40% requirement simply did not apply and is irrelevant here.

In <u>Donovan</u>, the Second Circuit, applying the pre-1994 regulations, held that the assistant managers who earned <u>less than $250 per week</u> were non-exempt because they spent more than forty percent of their time on non-exempt work (based on the long test applicable to employees who earned less than $250 per week). For the assistant managers who earned at least $250 per week, however, the Second Circuit correctly applied the short test, which did not have the 40% requirement, and held that such assistant managers were in fact exempt despite the fact that they spent more than even 50% of their week on non-exempt work:

> Under the "long test," a finding that more than 40% of an employee's work time in one week is spent on non-exempt work is dispositive. …
>
>            * * * *
>
> The regulations provide a different test for employees earning at least $250 per week. … Because Judge Sifton denied exemption for the "long test" Assistant Managers solely on the grounds that they devote 40% of their time to non-exempt work, he had to make separate findings as to those Assistant Managers who earn $250 or more. Concluding that their "primary duty" is, in fact, managerial, he held them exempt from the Act's overtime provisions.
>
>            * * * *
>
> As to [primary duty], § 541.103 offers as a "rule of thumb" or "useful guide" the proposition that "primary duty" means that work which occupies over 50% of an employee's time. Judge Sifton found that Assistant Managers spend "at least half their time" on non-exempt work, but § 541.103 expressly states that "time alone … is not the sole test" and that an employee may

> "nevertheless have management as their primary duty if the other pertinent factors support such a conclusion." His finding as to allocation of work time is thus not dispositive, albeit that it weights against Burger King's position.
>
> The other "pertinent factors," however, support that position. As to [relative importance of managerial and non-managerial duties], for example, the record fully supports Judge Sifton's findings that the principal responsibilities of Assistant Managers, in the sense of being most important or critical to the success of the restaurant, are managerial. Many of the employees themselves so testified and it is clear that the restaurant could not operate successfully unless the managerial functions of the Assistant Managers, such as determining amounts of food to be prepared, running cash checks, scheduling employees, keeping track of inventory and assigning employees to particular jobs, were performed. For that reason, as well as the fact that much of the oversight of the operations can be carried out simultaneously with the performance of non-exempt work, we believe the principal or most important work of these employees is managerial.

675 F. 2d at 519-521.

> Section 541.700 offers the same conclusion:
>
> > (c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c).

Morocho does not dispute that he at all relevant time earned $250 or more (or, in fact, at least $455) per week. (Def. Statement ¶ 17). He does not dispute that his primary duty was the management of the car wash and that he was responsible for managing the car wash even when not physically present. (Def. Statement ¶ 18). Nor does Morocho dispute that he was very often the "only manager at all at the car wash." (Bacarreza Aff. ¶ 2; Flores Aff. ¶ 2; Gusman Aff. ¶ 2;

Lemus Aff. ¶ 2; Lopez Aff. ¶ 2; Morales Aff. ¶ 2; Vigay Aff. ¶ 2).  Morocho merely states that he spent 95% of his average workday performing work such as "opening the Car Wash, washing the cars, finding a quick repair and later fixing the machines if they break down, replenishing the chemicals in the machines, cleaning and taking the garbage to the dumpster, collecting money from customers, and drying cars."  (Morocho Aff. ¶ 7).  As with the assistant managers who earned at least $250 per week in <u>Donovan</u>, however, Morocho does not challenge the undisputed fact that his primary duty was the management of the car wash – duties such as training new employees, directing the employees' work, ensuring that employees arrived to work on time and performed their jobs satisfactorily and scheduling employees' hours.  (Def. Statement ¶¶ 16-18).  That he also spent much of his time on non-exempt work is no different than the assistant managers in <u>Donovan</u>, where the Second Circuit recognized that "much of the oversight of the operations can be carried out simultaneously with the performance of non-exempt work."  675 F. 2d at 521.

Simply put, Morocho admits the underlying facts while denying the inevitable conclusion that he was an executive employee exempt from the FLSA's overtime provisions.[6]  For the foregoing reasons, Morocho's FLSA claim should be dismissed as a matter of law.

**POINT IV**

**PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED**

Plaintiffs apparently concede that their state law claims should be dismissed for lack of subject matter jurisdiction if their FLSA claims are dismissed.

---

[6]    Oddly, Plaintiffs ask "leave to conduct discovery to enable them to uncover … specifics as to the factors considered in an analysis of whether an employee is considered exempt under the Fair Labor Standards Act." (Opp Memo. at 14).  Morocho of course would be in the best position to dispute the underlying facts establishing his exempt status and failed to do so.  If Morocho is unable to dispute such facts, it is difficult to imagine what Plaintiffs expect to "uncover" in discovery.

**CONCLUSION**

For the reasons set forth above and in their opening papers, Defendants respectfully request that their motion to dismiss or, in the alternative, for summary judgment, be granted and that the Complaint be dismissed in its entirety.

Dated: July 12, 2007

GEHRING & SATRIALE LLC

By:     s/
       Joseph E. Gehring, Jr. (JG8178)

       The Lincoln Building
       60 East 42nd Street, Suite 817
       New York, New York 10165
       (212) 400-7420
       (212) 400-7440 (fax)
       Attorneys for Defendants