UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FREDDY M. MOROCHO, WALTER TACURI
on behalf of themselves and others similarly
situated,

                            Plaintiffs,

         - against -

GEORGE C. KELLY and NYACK COLONIAL
CAR WASH, INC.,

                            Defendants.
-------------------------------------------------------------x

07 Civ. 2979 (CLB)

*Memorandum and Order*

Brieant, J.

      Before the Court in this action for unpaid overtime compensation and tips under the Fair Labor Standards Act and New York Labor Law, is a motion for an order of dismissal or, in the alternative, summary judgment, pursuant to Fed. R. Civ. Pro. §§ 12(b)(6) and 56, respectively. The motion was filed on June 15, 2007 (Doc. 6). Opposition papers were filed on June 29, 2007 (Doc. 9). Reply papers were filed on July 12, 2007 (Doc. 13). The motion is treated as pursuant to Rule 56.

*Background*

      The following facts are presumed true for the purposes of this motion only. Defendant Nyack Colonial, owns and operates a car wash in Nyack, New York (the "car wash"), and Defendant George C. Kelly is the manager of the car wash (collectively the "Defendants"). Freddy M. Morocho and Walter Tacuri (collectively the "Plaintiffs"), claim to have been employed as attendants at the car wash during all relevant times.

1

In 1999, Defendant Kelly became manager of the car wash. In his declaration, Kelly avers that although he does not specifically remember anyone named "Walter Tacuri" working at the car wash, he believes that "Tacuri" may be Morocho's uncle who was working at the car wash in 1999, who Kelly knew as "Angel". Defendants, however, maintain that Tacuri is not Morocho's uncle. Apart from this factual inconsistency, both parties seem to concede that "Tacuri" was working at the car wash in 1999, when Kelly became manager, although there exists no record of Tacuri's employment. During this time, Kelly made it his practice to ask the employees at the car wash for verification of their employment eligibility.

Defendants allege that "Angel" was unable to provide such verification and, thus, stopped working at the car wash. Plaintiff Morocho, who was employed by the car wash from October 1995, asked Kelly to allow "Angel" to return to work at the car wash, to which Kelly consented, provided that "Angel" provide the employment verification. "Angel" resumed work at the car wash, but was again unable to provide the verification. It is contended that at this point, "Angel" ceased working at the car wash and has not worked for the car wash since. In his affidavit, Tacuri avers that he worked at the car wash until May 2004.

At some point after Kelly arrived at the car wash, although it is unclear when, Kelly promoted Morocho to "Operations Manager". This position entails such responsibilities as training new employees, directing the work of employees, scheduling employee hours and ensuring that employees arrived to work on time and performed their jobs satisfactorily. In addition, the operations manager was given the authority to hire and fire employees. As

Operations Manager, Defendants' allege that Morocho was paid a weekly salary of more than $455. In his affidavit, Morocho does not dispute this, but states only that he was paid in cash.

The Defendants further contend that as Operations Manager, Morocho was responsible for managing the car wash even when he was not physically present on the premises and was required regularly to call the car wash to "check in". In order to facilitate his responsibilities as Operations Manager, Defendants allege that Morocho was given a mobile phone paid for by Nyack Colonial. Additionally, Defendants allege that Morocho had the discretion to adjust his work schedule according to the needs of the car wash.

Plaintiff Morocho, in his affidavit, denies being promoted to Operations Manager in 1999 and claims that more than 95% of his time was at the car wash was spent performing "labor-intensive" tasks that are "non-managerial in nature". He avers that Defendant Kelly had the responsibility of scheduling and hiring employees. Further, in his affidavit, Morocho contends that he was required to make up part day absences by working additional hours on other days, but he does not state that the car wash ever docked his salary pay for absences of less than a day, nor that the car wash had a policy or practice of making such deductions. However, in Plaintiffs' Opposition Papers, it is claimed that Morocho's salary was subject to deduction for any absent time he did not make up.

Defendants maintain that Morocho was terminated in February 2007 for performance issues. Further, it is alleged that at no time during his employment did Morocho raise any issue with regard to overtime compensation or tips.

Plaintiffs filed this action on April 13, 2007.[1] Defendants have attached to the motion eight substantially identical affidavits of current car wash employees, that Morocho was their supervisor, and that Tacuri has not worked at the car wash throughout the time of their employment. The earliest date that any of the affiants began working at the car wash is 2002. Six of the eight affidavits are in Spanish. Defendants have also submitted a copy of the duties and responsibilities of the Operations Manager, as Exhibit A attached to the Declaration of George C. Kelly. Defendants also filed a Statement of Undisputed Material Facts pursuant to Local Rule 56.1. Plaintiffs filed papers in opposition to the motion, however have not filed a corresponding Local Rule 56.1(b) statement, but have included affidavits of Morocho, Tacuri, and Plaintiffs' attorney.

Plaintiffs claim that since 1999 Defendants failed to pay them overtime compensation, at a rate not less than one and one-half times their regular rate of pay, for hours they worked in excess of forty hours per week since 1999. See 29 U.S.C. § 207(a)(1). Additionally, Plaintiffs claim that Defendants have converted tips belonging to Plaintiffs in violation of the New York Labor Law § 196-d and common law.

---

[1] It is unclear whether Plaintiffs are attempting to bring a class or collective action.

Defendants seek summary judgment against Plaintiff Tacuri on the ground that his claim is time-barred, and against Plaintiff Morocho on the ground that he is an exempt employee under the FLSA.

*Discussion*

*Rule 12(b)(6) Motion to Dismiss*

In a motion to dismiss for failure to state a claim under Fed. R. Civ. Pro. § 12(b)(6), the Court "must view all allegations raised in the complaint in the light most favorable to the non-moving party...and must accept as true all factual allegations in the complaint." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996). Dismissal pursuant to this section is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). The standard for summary judgment is not materially different, in that any genuine issue of relevant fact is resolved in favor of the non-moving party. "The party against whom summary judgment is sought, however, 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In addition to the pleadings, the parties have provided the Court with multiple affidavits of car wash employees, as well as a copy of the duties of the Operations Manager. When matters

outside of the pleadings are presented to the Court, the motion to dismiss should be converted to a motion for summary judgment. *See* Fed. R. Civ. Pro § 12 (c). Because the parties are aware of the alternate ground for the motion, and both sides have submitted affidavits and matters outside of the pleadings for the Court's consideration, the Court will construe Defendants' motion as one requesting summary judgment pursuant to Fed. R. Civ. Pro. § 56.

*FLSA Statute of Limitations*

The Fair Labor Standard Act ("FLSA") provides for a two-year statute of limitations from the date the cause of action accrued and allows for a three-year limitations period in a case of willful violation. 29 U.S.C. § 255(a); *see also Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999). A claim for unpaid overtime accrues when the employer fails to pay the employee the required compensation for any workweek at the regular payday for the period in which the workweek ends. *See* 29 C.F.R. § 790.21(b).

Based on the pleadings and affidavits submitted to the Court, it is unclear when, if ever, Walter Tacuri began or stopped working at the car wash. Although it seems that the parties agree that Tacuri was working at the car wash in 1999, in his affidavit Defendant Kelly states that he does not remember anyone by that name working at the car wash since Kelly has been there. Kelly maintains that he believes that Tacuri may be Plaintiff Morocho's uncle, whom Kelly knew as "Angel". Thus, all the interaction that Defendant Kelly describes in his affidavit concern "Angel", who Kelly believed to be Morocho's uncle. In their affidavits, both Morocho and Tacuri deny that they are related to each other. Additionally, there are no records of anyone

6

named "Walter Tacuri" working at the car wash during the relevant time periods or, for that matter, at anytime.

Even if the Court accepts as true that Tacuri was working at the car wash in 1999, the date that Tacuri stopped working is in dispute. Defendants seem to allege that "Angel" has not worked for the car wash since 1999. The Plaintiffs, however, maintain that Tacuri worked at the car wash until May 2004.

From the papers provided to the Court, it is clear that there exists a genuine issue as to whether Tacuri actually worked at the car wash and if he did, when such employment ceased. In order to know: (1) if Tacuri has standing to bring this claim and (2) if standing exists, at what point the statute of limitations on his claims began to run, it is necessary to know when, if ever, Tacuri was employed by the car wash and when such employment if any there was, ended. Because these are material facts, the motion for summary judgment must be denied as to Tacuri.

*Exempt Employee under FLSA*

The FLSA provides that employees who work in excess of forty hours in a workweek are entitled to overtime compensation. *See* 29 U.S.C. § 207(a)(1). However, an employee is exempt from this provision if he is employed "in a bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1). Under the post-August 2004 regulations, the term "bona fide executive" is defined as any employee: (1) who is compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which

the employee is employed; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. *See* 29 C.F.R. § 541.100. This definition became effective on August 23, 2004. *See* 69 F.R. 22122 (April 23, 2004). Prior to the effective date, an employee earning over $250 per week was exempt for the purpose of overtime compensation if his or her "primary duty consist[ed] of management of the enterprise...and include[d] the customary and regular direction of the work of two or more employees." *See Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982); *see also* 29 C.F.R. § 541.1(f) (2003).

The term "management" includes, but is not limited to, activities such as training of employees, setting and adjusting hours of work, directing the work of employees, appraising employees' productivity and efficiency for the purpose of change in status, handling employee grievances, disciplining employees, apportioning the work among the employees, determining merchandise to be bought, stocked and sold, etc. *See* 29 C.F.R. § 541.102.

Under the regulations, "primary duty means the principle, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). This determination is made "based on all the facts in a particular case, with a major emphasis on the employee's job as a whole." *Id*. Factors to be considered include, but are not limited to, the importance of exempt duties as compared to other duties; the amount of time spent performing exempt work; the employee's

relative freedom from direct supervision; and the employee's salary compared to wages of other employees performing nonexempt work. *See Id.* Although time spent performing exempt duties is a useful guide, it is not the sole test. *See* 29 C.F.R. § 541.700(b). Nor does the section require that exempt employees spend more than 50 percent of their time performing exempt work. *Id.* ("Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.")

Defendants argue that Plaintiff Morocho meets the requirements of an "exempt employee" and as such, cannot allege a violation of § 207 of FLSA. Defendants' aver that as Operations Manager, Morocho: (1) was a salaried employee that was paid more than $455 per week; (2) in this position, his primary duties were managerial; (3) he customarily and regularly directed the work of two or more employees; and (4) he had the authority to hire or fire other employee and his recommendations were given particular weight.

The Defendants provide a copy of the job description of the Operations Manager position, which lists many of the types of managerial activities contemplated by 29 C.F.R. § 541.102. These duties include: (1) overseeing employee arrival time; (2) firing employees that continuously come to work late; (3) training and placement of employees and adjustment of employee scheduling; (4) dealing with any employee grievances; (5) checking the register and inventory and keeping stock; (6) wearing a beeper when not present during operating hours; (7) adjusting work time during busy time in order to be present during all such times. (Decl. George C. Kelly, Ex. A. June 14, 2007).

It is clear that the position of Operations Manager is managerial in nature and would satisfy the requirements for exempt employee status. However, in his sworn affidavit, Plaintiff Morocho denies ever being promoted to Operations Manager and states that Defendant Kelly was in charge of hiring and scheduling employees. He contends that 95% of his time at the car wash was spent performing non-exempt duties. In his affidavit, Defendant Kelly maintains that Morocho was Operations Manager of the car wash from 1999 to 2004. The affidavits of eight other car wash employees assert that Plaintiff Morocho was their supervisor until 2004, that Morcoho was responsible for scheduling their hours and directing their work, and that many times, Morocho was the only manager at the car wash.

Because there is a genuine issue of fact as to Morocho's duties at the car wash during the relevant times, the motion for summary judgment is also denied as to his claim.

A pre-trial conference of counsel will be held October 25, 2007 at 11:00 A.M.

X

        X

                X

                    X

SO ORDERED.

Dated: White Plains, New York
October 23, 2007

                                        */s/ Charles L. Brieant*
                                       Charles L. Brieant, U.S.D.J.