UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREDDY M. MOROCHO, WALTER M. TACURE, on behalf of themselves and all others similarly situated,

                Plaintiffs,

- against –

GEORGE C. KELLY, and NYACK COLONIAL CAR WASH, INC.,

                Defendants.

No. 07 Civ. 2979 (CLB)(MDF)

ELECTRONICALLY FILED

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for leave to amend the complaint.

**Argument**

**I.**

**PLAINTIFFS' MOTION TO AMEND IS TIMELY**

Defendants' assertion that plaintiffs have not proceeded expeditiously in this action and failed to take relevant discovery has no basis. As set forth in detail below, plaintiffs' diligent and exhaustive efforts to obtain discovery in this action have been meet by resisted by defendants at every turn. Defendants either delayed production of discovery, withheld and concealed responsive documents, or simply declined to produce altogether the very discovery they now claim plaintiffs' should have sought earlier.

As the outset of this action, and for the first seven months thereafter, defendants initially refused to provide *any* discovery and instead, after seeking a series of adjournments, moved for summary judgment before any discovery had occurred. Declaration of Karl J. Stoecker sworn to on May 15, 2008 ("Stoecker Decl."), Exh. A . Needless to say, Judge Brieant denied that motion by Memorandum and Order entered on October 25, 2007. Accordingly, defendants did not file their Answer to the Complaint until November 8, 2007.

Defendants' contention that "[p]laintiffs were aware of the existence of the three other car washes when they commenced this action" - as evidenced by an "erroneous" reference to them in the Complaint - and made no effort to take relevant discovery, is false. The Complaint alleges only, upon information and belief, that Nyack Colonial "operates" several car washes. It further alleges, again upon information and belief, that defendant Kelly owned Nyack Colonial. Plaintiffs' first document request therefore sought, among other things, "any tax returns filed by the defendants" and "all payroll records created and maintained by defendants" (including, of course, defendant Kelly). *See, e.g.*, Plaintiff's' First Request For the Production of Documents, Nos. 3, 5, 7, 8, 11, 15-20.[1] The foregoing document requests embraced *all* employees of defendants and were not limited to those employed at the Nyack Colonial Car Wash. Thus defendants' statement that plaintiff "never actually requested any information pertaining to the other business entities and individuals" is false. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend Their Complaint ("Defts. Mem.") at 3.

---

[1] Plaintiff's First Request for the Production of Documents is annexed as Exhibit B to the Declaration of Louis R. Satriale, Jr., sworn to on April 2, 2008 ("Satriale Decl.").

(emphasis in original)  To the contrary, plaintiff sought discovery regarding *all* of defendants' employees.

Defendants, however, objected to the foregoing requests and maintained that "[i]nformation unrelated to this action *or to plaintiffs* has been redacted from the documents to be produced."  Defendants' Responses and Objections to Plaintiff's Request for Production of Documents at 2, ¶ E.  A copy of the foregoing is annexed as Exhibit C to the Declaration of Karl J. Stoecker dated May 15, 2008 and submitted herewith.  Thereafter, defendants simply declined to produce, or redacted, all information which did not specifically refer to named plaintiff Morocho.  *See, e.g*. Stoecker Decl., Exh. I (showing defendants' redactions of information regarding all employees other that plaintiff Morocho).

Plaintiff timely objected to these redactions and by order dated March 7, 2008, defendants were directed to supplement their document responses  and were given until April 15, 2008, to do so.  Thus far, however, they have failed to do so.  Stoecker Decl., Exh M at 12. (Transcript of the March 17, 2008 Conference).  The same is also true with respect to tax returns plaintiffs requested in their initial document request.  After plaintiffs objected to defendants' production of unsigned tax returns, defendants were ordered to produce signed returns by order dated March 17, 2008, but have thus far failed to do so.

Defendants' argument that plaintiff "served no subpoenas on the other car washes, all of which they knew existed" is disingenuous.  Disingenuous because defendants strenuously contested the relevance of such discovery and failed to produce it when it was requested.  Thus defendants unilaterally withheld or redacted all responsive

documents containing any information other than that specifically referencing plaintiff Morocho and, when challenged, contended that the Court had approved all such redactions and, in effect, had given them blanket immunity from any consequence for their failure to provide discovery. The assertion, moreover, that plaintiffs "knew" about the other car washes is incorrect inasmuch as the Complaint indicates only that plaintiff's believed defendants operated other car washes, not that they knew the name - legal or otherwise - location or other specifics regarding defendants' other car washes.

        Plaintiffs were obviously unaware of the ownership structure of defendants' business, and the nature and extent of defendant Kelly's relationship with the other car washes, until the Kelly deposition. Even then, however, the picture was still unclear because defendant Kelly professed to be ignorant regarding the precise ownership structure of the various car washes and defendants', and proposed defendants', relationship to them. Indeed, given that defendants redacted every reference to anything but the named plaintiff in all of the documents they produced in this action (and later contended that such redactions were approved by the Court) it was impossible to discern any information regarding the other car washes until the depositions of defendant Kelly on January 15, 2007 and John Occhino on March 7, 2008.

        Plaintiff accordingly learned, for the first time at the Kelly deposition, among other things, that proposed new defendants James Miner, John Weigel and Timothy Weigel are owners of defendant Nyack Colonial; that proposed defendant Miner also owns car washes in Northvale and Pearl River; and that plaintiff Kelly and proposed defendant Timothy Weigel also own a car wash located in Tenafly through an entity referred to as GT Car Wash. Kelly Tr. 6-10, 17-19. As noted above, however,

Defendant Kelly was not sure how the ownership structure of the various corporate entities and businesses was "all broken down."[2] *See, e.g.*, Kelly Tr. at 9, 16-17, 20-21, 23.[3] Mr. Kelly further conceded that he didn't even actually know if sworn statements he made in a Declaration submitted earlier in this action – the substance of which is repeated in Defts. Brief at 3 – were correct. *Compare* Kelly Tr. 102-105 *with* Kelly Declaration dated June 14, 2007 ("Kelly Decl.") at ¶ 1. A copy of the earlier Kelly Declaration is annexed as Exhibit A to the Satriale Declaration. Indeed, additional light was not shed on this subject until the deposition of non-party witness John Occhino, which, following a series of postponements by defendants counsel, did not occur until March 7, 2007 - two days *after* the instant motion seeking leave to amend was filed.

Plaintiffs also learned for the first time at the Kelly deposition that defendants had wrongfully withheld and failed to disclose numerous documents regarding their payroll practices which were responsive to Plaintiffs' First Request for the Production of Documents. Accordingly, the very next day after the Kelly deposition we itemized the deficiencies in defendants' document responses based on the information revealed by defendant Kelly. Stoecker Decl., Exh. D. In response, defendants reiterated their opposition to discovery regarding employees other than plaintiff – the very discovery defendants now claim plaintiff's failed to seek - and again declined to produce responsive documents. Stoecker Decl., Exh. E. Accordingly, by letter to Judge Brieant dated February 5, 2008, plaintiff promptly moved to compel such documents. Stoecker Decl., Exh. F . Thereafter, however, the case was transferred to Your Honor and the

---

[2] Excerpts from the Kelly Deposition are annexed as Exhibit K to the Stoecker Declaration.

matters raised in Ms. Zdanis' February 5, 2008 letter were addressed for the first time at a conference on March 5, 2008, the same day the instant motion to amend was filed.

Defendants, meanwhile continued to delay and resist discovery at every turn. See, e.g., Stoecker Decl. Exh. B. Thus the Occhino deposition was initially scheduled for February 1, 2008. Counsel for defendant, however abruptly cancelled the deposition two days earlier, by e-mail, noting simply that he "will not be ready." Stoecker Decl., Exh. G. Thereafter, defendant's counsel sought and received an extension of the discovery deposition cut-off date until February 29, 2008 and the accountants deposition was scheduled for February 25, 2008. (A copy of defendants' counsel February 6, 2008 request for an extension of the discovery deadline is annexed as Exhibit L to the Stoecker Declaration.) Once again, however, counsel for defendant abruptly cancelled the Occhino deposition and thereafter simply ignored the February 29, 2008, deadline in rescheduling the deposition for March 7, 2008. Stoecker Decl., Exh. H.

In sum, defendants' oft-repeated assertion that plaintiffs bring this motion seeking leave to amend the complaint after the March 14, 2008 discovery deadline, is false. The instant motion was filed on March 5, 2008 and, in any event, plaintiffs have sought relevant discovery expeditiously throughout this action. The instant motion was made promptly after receipt of the Kelly deposition transcript and, indeed, before the deposition of non-party witness Occhino had even occurred. Given the ignorance professed by defendant Kelly at his deposition as to the ownership structure of these jointly owned and operated car washes, it could even be argued that the instant motion was pre-mature, coming as it did before Mr. Occhino shed additional light on defendants' and proposed defendants' relationship vis-à-vis these businesses.

Defendants reliance on *Grochowski v. Phoenix Const.,* 318 F.3d 80 (2nd Cir. 2003), is misplaced. In that case the Second Circuit declined to find that the District Court abused its discretion in denying leave to amend where "[t]he plaintiffs delayed more than one year before seeking to amend their complaint. Furthermore, when the motion was filed, discovery had been completed and a summary judgment motion was pending." 318 F.3d at 86. Here, in contrast, the motion to amend was made before discovery closed, within weeks after plaintiffs discovered the relationship among the defendants and proposed defendants, and not while a summary judgment motion was pending.

Similarly in *Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442 (2nd Cir. 1985), and *Sly Magazine, LLC v. Weider Publications LLC,* 241 F.R.D. 527 (S.D.N.Y. 2007), the plaintiffs moved to amend their complaints *after* discovery had ended and a motion for summary judgment had already been filed. *Ansam*, 760 F.2d at 446 *Sly*; 241 F.R.D. at 529.[4] In denying leave to amend in the foregoing cases, the courts made specific findings as to how the proposed amendments would prejudice the defendants. Here, in contrast, defendants have not articulated any prejudice that they will suffer if leave to amend is granted.

---

[4] Significantly, in *Sly*, the Court gauged the "conclusion" of discovery as the date on which the defendants finally responded to outstanding discovery requests not the Court-ordered discovery deadline. *See* 241 F.R.D. at 529, 532 (court notes that "[d]iscovery in this case came to a close when Curtis produced the list of third party distributors and retailers to Plaintiff in early February 2006[]" notwithstanding that the discovery deadline was January 24, 2006). Here, of course, defendants have yet to produce signed tax returns, unredacted cash disbursement documents or Department of Labor documents.

As to the latter, defendants initially concealed the existence of the Department of Labor 's investigation and later inadvertently disclosed it during a conference before the Court on March 17, 2008, *after* the instant motion was filed. *See* Satriale Decl., Exh. B (Plaintiffs' First Request for the Production of Documents dated October 4, 2006) at 6, Request No. 20. (seeking documents regarding "charges, allegations, complaints, investigations or lawsuits concerning alleged" wage violations); Stoecker Decl., Exh. M (Transcript of the March 17, 2008, Conference) at 8.

7

II.

THE PROPOSED AMENDMENT IS NOT FUTILE

Defendants limit discussion of futility to a single perfunctory paragraph, without legal citation, on the last page of their brief. Thus although defendants have not articulated the basis of their futility argument, we nonetheless address it here. First, the mere fact that defendants and proposed defendants operated their business in different locations, and through nominally distinct entities, does not foreclose a finding that plaintiffs are "similarly situated" with their fellow employees of the defendants who were paid the same way and performed the same job, albeit at different locations. Section 216(b) of the FLSA provides that "any employer who violates the provision of section 6 or section 7 of this Act shall be liable to the employee or employees affected." It further provides that one employee may bring an action to enforce this liability on behalf of himself "and other employees similarly situated." Certainly plaintiffs here are "similarly situated" with their fellow employees of the defendants and proposed defendants who did the same job and were paid the same way.[5] Indeed, Defendant Kelly conceded at his deposition that at least one of the other locations at which defendants and proposed defendants operated car washes maintained precisely the same payroll practices and policies that plaintiffs challenge here. Kelly Tr. 162.[6]

---

[5] Defendants apparent argument that the proposed new defendants are distinct "persons" is unavailaing. The FLSA defines the term "person" as "an individual, partnership, association, corporation, business trust, legal representative, or *any organized group of persons*. 29 U.S.C. § 203 (emphasis added). In keeping with this definition, court's focus on "economic realities" not corporate niceties when gauging liability under the FLSA and other federal remedial statutes. *See generally Papa v. Katy Industries, Inc*. 166 F.3d 937 (7th Cir. 1999). *See also Takacs v. Hahn Automotive Corporation,* 1999 WL 33117265 (S.D. Ohio 1999) (defendants who operated an "integrated enterprise" deemed "employer" under the FLSA).

[6] Defendant Kelly, of course, didn't own or operate the Nyack Colonial Car Wash alone. Indeed, contrary to plaintiffs' initial understanding, he doesn't own it at all. Instead, defendant Kelly and the

The failure of defendants to observe corporate formalities further buttresses the case for considering their car wash operations as a single entity. In *Stahlex-Interhandel Trustee, Reg. v. Western Union Financial Services Eastern Europe*, 2002 WL 31359011 (Oct. 21, 2002 S.D.N.Y.), the court summarized the standards for piercing the corporate veil under New York law as follows:

> "Whether a subsidiary is an alter ego of its corporate parent is a fact-intensive inquiry that must take into consideration a variety of factors: (1) failure to observe corporate formalities; (2) undercapitalization; (3) intermingling of corporate funds; (4) overlap in corporate officers, directors, and personnel; (5) common office space, address and telephone numbers; (6) the amount of business discretion exercised by the subsidiary corporation; (7) whether the two companies deal with each other at arm's length; (8) whether the corporations exist as independent sources of profit; (9) the guarantee of the subsidiary's debts by the parent; and (10) common use of corporate property.

2002 WL 31359011 at *7.

Defendant Kelly conceded at his deposition that the various car washes were effectively operated as a single integrated enterprise. Thus, he testified that, among other things: (i) the car washes shared parts; (ii) he would bring parts from one car wash to the others; (iii) he did "plenty of things" at the Northvale Car Wash, for example, including "help[ing] with maintenance or working . . . aspects of the car wash;" (iv) he would also "help[] out" at the Pearl River car wash; and (v) he shared operational responsibility at the Tenafly car wash with proposed defendant Timothy Weigel.[7] Kelly Tr. at 21-24, 162. Indeed, one of plaintiff Morocho's duties was to keep "stock of all parts used by us *or other car washes*." Satriale Decl., Exh A *(*Exhibit A to the Kelly

---

proposed defendants share ownership and/or control of both Nyack Colonial, and several other car washes, with the proposed defendants.

9

Declaration)  The tax returns produced by defendants in this action, moreover, reflect that defendant Nyack Colonial Car Wash, Inc., was severely undercapitalized, lost money during the six plus years at issue in this action and never paid any taxes during this period of time.  Thus defendant Kelly's deposition testimony as well as contemporaneous documents annexed to his own Declaration flatly contradict the conclusory boilerplate assertions contained in paragraph 2 of the Kelly, Miner, Timothy Weigel and John Weigel Declarations defendants submitted on this motion.  These factual disputes cannot be resolved on this motion to amend.

In sum, defendants operated their car washes as a single "integrated enterprise" and ignored corporate formalities.  They are accordingly jointly liable under the FLSA for their uniform payroll policies and practices which resulted in *all* of their employees not receiving appropriate overtime compensation when they worked more than forty hours per week.   The mere fact that defendants operated their business in different locations through a variety of entities is not dispositive and certainly not grounds for a finding of futility.

Dated:   New York, New York
         May 12, 2008

_____/s_____

Karl J. Stoecker, Esq. (KS-0571)
LAW OFFICES OF KARL J. STOECKER
22 Jericho Turnpike, Suite 100 East
Mineola, New York 11501
(516)279-6383